13.11.75 EXILELEXIS INC v. REA I think there has been some confusion created or at least some not established record. An RCE isn't always a, it's not treated like a continuation application or a divisional application. It can be a very simple, in our case, in the case involving 16 days, it was simply there was an interview, there was an examiner's interview, there was an agreement that if the claims were revised as such, as had been presented, that the patent would issue. That was then filed as an RCE with the new, the paper filed with the RCE were new claims, were amended claims. That's why it only took a matter of 16 days is because it had essentially been agreed to. So to expedite, to expedite the application process, we filed the RCE. Would you have to file an RCE in order to amend the claims? We could have done it by an examiner's amendment. It could have been done in a different way, but this actually expedited the process. By not putting the burden on the examiner to file an examiner's amendment, we filed an RCE instead. And what happens, we were deprived of 114 days of PTA as a result. That's why we believe that secondary, and hopefully I answered your question, but that's why we believe that's an unreasonable interpretation of the time consumed by language. Right, but I guess what prompted me to ask the question of the point that I did was your reliance on how the 1999 statute was for inventor protection. And it seems to me that that argument loses rather a lot of force if what you're talking about is 16 or 8 days as opposed to 100 days or something. Well, we lost, the calculation is 114 days versus 98 days. That's what we're arguing about. Right, but there are two distinct issues, and I ask you to assume that you would prevail on the period from the notice of allowance to the issuer. Understood. Thank you. Well, I also don't think that the issue of, it's been raised before, congressional silence as to the impact of the RCE supports their view either. There's a simple reason why Section B.1.B. is silent with respect to RCEs filed after the 3-year deadline. That is, the section is directed to an entirely different issue, which is the guarantee that the patent will issue within the 3-year period. It was not directed to the impact of filing an RCE after the period has lapsed, so much has been made of the silence and the ability of the Patent and Trademark Office to enact a rule that fills in that gap. But when we look at the plain language of the statute, there is no ambiguity. There's a general rule, and there are limitations to it. There was no perceived attention of Congress anywhere to address this filing of an RCE after the end of the 3-year guarantee. There's nothing in the statute that seems to indicate in this provision we're talking about, 154.B.1.B., that indicates Congress wanted to address that issue. It's silent on that, but the silence doesn't create an ambiguity that the Patent and Trademark Office can then fill in with this rule that they've made, which eliminates B delay after the filing of a 3-year period. So I think there's been some misunderstandings or trying to do too much with silence when the statute is perfectly well-constructed as it is and didn't need any more interpretation, didn't need any more rulemaking above and beyond that. One other argument that the PTO has made is they try to justify their interpretation based on consistency. That is, they're consistently treating the impact of RCEs before and after the 3-year deadline. We don't believe that that justifies the rule either. There's no evidence that Congress, there's no indication that Congress ever required that the RCEs be treated the same at both ends, and thus the PTO is lacking any authority to enact that provision. The second, more importantly, the very nature of deadlines is you have two different worlds. You have a world before the deadline, and you have a world after the deadline. As courts have repeatedly recognized, deadlines are inherently arbitrary, but they're essential. Filing deadlines inevitably require that some persons who have an almost equally strong claim to favor treatment be placed on a different side of that line. The government, the office postulates all sorts of terrible abuses that might occur by actions on one side or another of the deadline. We appreciate that those are not, the possibility of abuse is not here present. But that seems, or at least they emphasize this as a powerful reason why we should assure that there's no such opportunity. Do you have a comment on that theory? I do have a comment. I think Wyeth directs the absurd results analysis quite well, and I'll leave it to what the court in Wyeth said. They said, regardless of the potential of the statute to produce slightly different consequences for applicants in similar situations, this court does not take upon itself the role of correcting all statutory inequities, even if it could. In the end, the law has put a policy in effect that this court must enforce, not criticize or correct. Yet that's precisely what the PTO is trying to do with their absurd results argument. That's correct something that they think was left wrong by Congress. That's not within their power. So, and the other argument I would make to that, the other response, is that as in Wyeth, we can point to equally absurd results here, going the other way. And I think the example of both that we were talking about before, the fact that our, in one case, our RCE was pending for 8 days, and the other 16 days, and that we lost months and months of PTA, is a countervailing absurd result. So I don't think that... It's an absurd result if you're not taxed with the period between the notice of allowance and the issuance? What's absurd about it? Well, I, yes, I agree with you. It's not absurd, in the 8 days or the 16 days. But that's how it applied to us, and I'm trying to address it more broadly. But as far as to us, no, it's not an absurd result. The difference between the 8 or 16 days last I couldn't tell you is an absurd result, not getting those additional tax. So that's my response to that. And I know I have more time, Your Honor, but I don't necessarily have questions. The Court has, and it's been a long day. Okay, thank you. Ms. Pasek. May I please report? There are a few things that I would like to respond to. First, on this issue of the patent, it would be an absurd result where the RC takes a few days to lose then many more days of PTA. I want to point out, in Excel 6-2, that was because there were 90 days to file the, to pay the issue fee. And the Excel 6 took basically all of that time. So a lot of that time that we're talking about whether or not to give PTA after the notice of allowance issue, that was time that was consumed. Yeah, but the statute deals with delays and paying the issuance fee, doesn't it? And they didn't exceed that period. They did not exceed that period. But the question of whether it is absurd for them not to get PTA for that time,  I think it comports with the language of the statute. On to the question of whether this treats the RCE as applicant delay. We don't think it does. We think this provision is about PTO delay. And all it says is RCE is, just like the other things in Section B, like Fertilise Appeals and Applicant Requested Delay, they aren't delay by the PTO. And Subsection B is concerned with delay by the PTO. You still get a delay if the PTO fails to meet any of its deadlines. The legislative history, of course, here, does discuss submarine time. It discusses concerns with creating an incentive to delay because it wants to give time where there are delays by the PTO. But while preserving that 20-year post-GATT patent term, this incentive for applicant delay and for this submarine patent practice, and while the statute does talk in terms of a three-year guarantee, there's no question that that guarantee doesn't apply if the RCE is filed before the three-year mark. So it's only a question of whether Congress wanted to treat that differently if it's filed before or after the three-year mark. If there are no further questions, I would ask this Court to affirm Explicis II in reverse in Explicis I. Okay. Thank you, Ms. Kurzweil and Mr. Hueb. The case is taken under submission. Thank you. Thank you. All rise. The honor report is adjourned until tomorrow morning at 2 o'clock.